UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
JUN 06 2024
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.  SUPERSEDING INDICTMENT NO.5:24-CR-43-S-KKC-MAS

ROBERTO GODOY-SINGH,
CESAR DANIEL LINARES-OROZCO,
████████████████,
EDUARDO RIGOBERTO VELASCO CALDERON,
JOSE MANUEL MARTINEZ GOMEZ,
 aka MEÑO,
JAMELE WYDALE MUNDY,
CHRISTOPHER GROVER REYNOLDS,
CLAUDETTE NADINE REYNOLDS,
KEITH ANTHONY JOHNSON, and
CARLOS ERICK VAZQUEZ GONZALEZ

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1. The United States is one of the world's largest and most lucrative markets in which to distribute controlled substances, including, but not limited to, fentanyl, cocaine, methamphetamine, and heroin.

2. Drug trafficking organizations (DTOs), including the Cartel de Jalisco Nueva Generación (CJNG), smuggle large quantities of fentanyl, cocaine, methamphetamine, and heroin into the United States. These drugs are sold in cities and towns across the United

States almost exclusively for cash. The bulk cash accumulates and generates enormous illicit profits.

3.  For this criminal business to continue and achieve its purpose, it is necessary for this money to be repatriated to the foreign drug trafficking organization that manufactured and smuggled the fentanyl, cocaine, methamphetamine, and heroin into the United States. However, because this money is the proceeds of a "specified unlawful activity," *i.e.*, proceeds from the distribution of controlled substances, special care and skill must be taken to transact it to avoid detection by law enforcement.

4.  Traditionally, drug trafficking organizations, including the CJNG, relied on shipments of this bulk cash from the United States, where the drugs were sold, back to Mexico, where the traffickers lived. This method involved both risk of seizure by law enforcement and the impracticalities of transferring substantial quantities of paper currency that is difficult to move, store, and protect. Drug trafficking organizations also divided narcotic proceeds into smaller amounts and transmitted the funds through money service businesses to Mexico or deposited the money into bank accounts for transfer. However, advances in anti-money laundering statutes and laws by governments around the world have made simply depositing this cash into the international banking system substantially more challenging for traffickers, due to the increased risk of detection.

5.  Drug trafficking organizations, including the CJNG, have developed other means of moving fentanyl, cocaine, methamphetamine, and heroin proceeds from the United States back to Mexico – in particular, by utilizing cryptocurrency and bank wire transfers. Cryptocurrency exchanges allow customers to trade various cryptocurrencies for

Case: 5:24-cr-00043-KKC-MAS   Doc #: 601   Filed: 09/29/25   Page: 3 of 18 - Page
Case: 5:24-cr-00043-KKC-MAS *SEALED*   Doc #: 79   Filed: 06/06/24   Page: 3 of 18 - Page
ID#: 320

other digital currencies or for fiat money. The digital assets (cryptocurrencies) utilized by the DTOs are numerous but include Bitcoin (BTC) and USD Coin (USDC).

6. The drug trafficking organizations have hired a network of professional money launderers i.e., "money brokers," to undertake the laundering of its narcotic proceeds. These Guadalajara and Mexico City-based money brokers work for a "commission," or a percentage of the money laundered on each "contract." This scheme incentivizes money brokers to obtain and fulfill as many "contracts" as possible. It follows that these money brokers, along with their co-conspirators, rely on and seek to further the continued success of the narcotics trade in the United States.

7. For purposes of this Indictment, a "contract" is an agreement to obtain money that is proceeds of specified unlawful activity that is already in the United States and to conduct financial transactions with that money so it, or its equivalent value, can be provided to individuals and groups in Mexico whose drug trafficking activities generated it. Relatedly, a "commission" is a percentage of the money paid to brokers who are involved in the transaction.

## THE SCHEME

8. A drug trafficking organization, such as CJNG, will offer a contract to the Mexico-based money brokers to pick-up drug proceeds (often referred to as "bulk currency") in a specified U.S. city, such as Lexington, Kentucky; Chicago, Illinois; Atlanta, Georgia, Cincinnati, Ohio, Toledo, Ohio; Birmingham, Alabama; or St. Louis, Missouri. The contract may be offered to multiple money brokers. The broker will then see if his network of conspirators in the United States can effectuate the pick-up.

Case: 5:24-cr-00043-KKC-MAS Doc #: 101 Filed: 09/29/25 Page: 4 of 18 - Page
Case: 5:24-cr-00043-KKC-MAS *SEALED* Doc #: 79 Filed: 06/06/24 Page: 4 of 18 - Page
ID#: 321

9. When the Mexico-based money broker accepts the contract from a drug trafficking organization (DTO), such as the CJNG, he obtains a telephone number for an individual (often referred to as a courier) who will pick up the bulk cash in the U.S. The broker provides the phone number and pre-arranged verification code to the drug trafficking organization's representative in Mexico. The verification code is often the serial number from a one-dollar bill and is referred to as a "bill code" or a "token." The Mexico-based drug trafficking organization passes this information to its U.S. affiliates and the delivery of the bulk cash is arranged by the network of conspirators.

10. The U.S. affiliates meet the money broker's representative/courier in various public locations, including parking lots and hotels, to deliver the bulk cash. To verify the identity of the broker's U.S. representative, the U.S. affiliate of the Mexico-based drug trafficking organization requests to see the bill code or token prior to conducting the transaction. Once verified, the U.S. affiliate of the Mexico-based drug trafficking organization passes the bulk currency to the broker's U.S. representative.

11. After collection of the bulk cash, the Mexico-based money broker directs that the money be wired to a specified bank account or cryptocurrency wallet. The illicit proceeds may pass through several bank accounts or cryptocurrency wallets. The money may be "off ramped" (exchanged for fiat currency) in Mexico, as profits of the drug trade, as well as reinvested to purchase additional narcotics and to fund the DTO's operations.

12. Defendants **ROBERTO GODOY-SINGH, CESAR DANIEL LINARES-OROZCO,** ▓▓▓▓ ▓▓▓▓▓ ▓▓▓▓ **EDUARDO VELASCO CALDERON, and JOSE MANUEL MARTINEZ GOMEZ, aka MEÑO,** all serve as

money brokers for drug trafficking organizations, including the CJNG, to launder their fentanyl, cocaine, methamphetamine, and heroin proceeds. The defendants' criminal conduct enables the drug trafficking organizations to reap the massive profits from its drug sales in the United States while avoiding detection by law enforcement. In return, these brokers receive a commission from every completed contract; that is, every time the proceeds of drug sales are returned to the DTOs, the brokers are financially compensated for their efforts.

13. Defendant **CARLOS ERICK VAZQUEZ GONZALEZ** owns a cryptocurrency exchange wallet that he utilizes for the receipt and transfer of proceeds from the sale of fentanyl, cocaine, methamphetamine, and heroin. During the money laundering conspiracy alleged herein, **VAZQUEZ** received proceeds from all the primary brokers, including **ROBERTO GODOY-SINGH, CESAR DANIEL LINARES-OROZCO,** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **EDUARDO RIGOBERTO VELASCO CALDERON,** and **JOSE MANUEL MARTINEZ GOMEZ, aka MEÑO,** and transferred those proceeds to other cryptocurrency wallets, or assisted in the off ramping of those proceeds to fiat currency.

14. Defendants **JAMELE WYDALE MUNDY, CHRISTOPHER GROVER REYNOLDS, CLAUDETTE NADINE REYNOLDS,** and **KEITH ANTHONY JOHNSON** are affiliated with U.S.-based DTOs. All these individuals agreed to deliver drug proceeds to other individuals whom they believed to be individuals affiliated with the Mexico-based money brokers.

## COUNT 1
## 18 U.S.C. § 1956(h)
## [Money Laundering Conspiracy]

The allegations at paragraphs 1 through 14 are incorporated herein by reference.

Beginning in or about August 2018, the exact date being unknown to the Grand Jury, and continuing through on or about May 3, 2024, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ROBERTO GODOY-SINGH,
CESAR DANIEL LINARES-OROZCO,**

**EDUARDO RIGOBERTO VELASCO CALDERON,
JOSE MANUEL MARTINEZ GOMEZ,
aka MEÑO,
JAMELE WYDALE MUNDY,
CHRISTOPHER GROVER REYNOLDS,
CLAUDETTE NADINE REYNOLDS,
KEITH ANTHONY JOHNSON, and
CARLOS ERICK VAZQUEZ GONZALEZ**

did knowingly conspire and agree to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, concealment money laundering, by conducting and attempting to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity; that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity; and knowing that the property involved in the financial transactions

represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); all in violation of Title 18, United States Code, Section 1956(h).

## COUNT 2
## 18 U.S.C. § 1956(a)(1)(B)(i)
## [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about April 17, 2021, and continuing through on or about April 30, 2021, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ROBERTO GODOY-SINGH**

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is, the delivery of $173,960.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 1, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 3
## 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about June 28, 2021, and continuing through on or about on or about June 29, 2021, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### ROBERTO GODOY-SINGH

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $90,010.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 4
## 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about December 30, 2020, and continuing through on or about on or about December 31, 2020, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### CESAR DANIEL LINARES-OROZCO

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $99,000.00 in bulk cash, which was subsequently converted to cryptocurrency (Bitcoin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### COUNT 5
### 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about November 10, 2020, and continuing through on or about on or about November 13, 2020, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

Case: 5:24-cr-00043-KKC-MAS   Doc #: 201   Filed: 09/29/25   Page: 10 of 18 - Page
Case: 5:24-cr-00043-KKC-MAS *SEALED*   Doc #: 79   Filed: 06/06/24   Page: 10 of 18 - Page ID#: 327
ID#: 1079

### CESAR DANIEL LINARES-OROZCO

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $250,200.00 in bulk cash, which was subsequently converted to cryptocurrency (Bitcoin) and wired, minus commissions, to a specified wallet, and the wiring of $18,000 to a specified bank account, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### COUNT 6
### 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about May 2, 2021, and continuing through on or about on or about May 6, 2021, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $124,869.00 in bulk cash, which was subsequently

converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 7
## 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about June 18, 2021, and continuing through on or about on or about June 23, 2021, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $125,006.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21,

United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 8
## 18 U.S.C. § 1956(a)(1)(B)(i)
## [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about June 2, 2022, and continuing through on or about on or about June 8, 2022, in Kenton County, in the Eastern District of Kentucky, and elsewhere,

**EDUARDO RIGOBERTO VELASCO CALDERON**

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $118,050.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in

violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 9
## 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about February 13, 2023, and continuing through on or about on or about February 27, 2023, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### EDUARDO RIGOBERTO VELASCO CALDERON and
### JAMELE WYDALE MUNDY

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $147,540.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 10
## 18 U.S.C. § 1956(a)(1)(B)(i)
## [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein by reference.

From on or about March 16, 2023, and continuing through on or about on or about March 21, 2023, in Boone County, in the Eastern District of Kentucky, and elsewhere,

## JOSE MANUEL MARTINEZ GOMEZ,
## aka MEÑO,

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $110,00.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 11
## 18 U.S.C. § 1956(a)(1)(B)(i)
## [Concealment Money Laundering]

The above allegations at paragraphs 1 through 14 are incorporated herein

by reference.

From on or about October 23, 2023, and continuing through on or about on or about November 6, 2023, in Campbell County, in the Eastern District of Kentucky, and elsewhere,

## JOSE MANUEL MARTINEZ GOMEZ,
### aka MEÑO,

did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $70,040.00 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wired, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i).

## FORFEITURE ALLEGATIONS
### 21 U.S.C. § 853
### 18 U.S.C. § 982(a)(1)

1. The above allegations are incorporated herein for the purpose of alleging Forfeiture.

2. In committing the offenses alleged in Counts 1-11 of the Indictment, the same being punishable by imprisonment for more than one year, **ROBERTO GODOY-SINGH, CESAR DANIEL LINARES-OROZCO,** ▮▮▮▮▮▮▮▮▮▮▮▮ **EDUARDO RIGOBERTO VELASCO CALDERON, JOSE MANUEL MARTINEZ GOMEZ, aka MEÑO, JAMELE WYDALE MUNDY, CHRISTOPHER GROVER REYNOLDS, CLAUDETTE NADINE REYNOLDS, KEITH ANTHONY JOHNSON, and CARLOS ERICK VAZQUEZ GONZALEZ** shall forfeit to the United States any and all property, real or personal, involved in the violation(s) of 18 U.S.C. §§ 1956 and/or 1957 and any property traceable to such property. Any and all interest that the above-named defendants have in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

3. The property to be forfeited includes, but is not limited to, the following:

**MONEY JUDGMENT:**

A forfeiture money judgment in the amount involved in the violations alleged in this indictment, which is at least $58 million dollars.

4. If any of the property listed above, as a result of any act or omission of the Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

███████████
FOREPERSON

_____
CARLTON S. SHIER IV
UNITED STATES ATTORNEY

## PENALTIES

### COUNTS 1-11:

Imprisonment for not more than 20 years, a fine of not more than $500,000, or twice the value of the property involved in the transaction, whichever is greater, and a term of supervised release of not more than 3 years.

**PLUS:**   Mandatory special assessment of $100 per Count.

**PLUS:**   Forfeiture / money judgment as listed.

**PLUS:**   Restitution, if applicable.